UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

AT LAW AND IN ADMIRALTY

Case No.: 04-20499 CIV MOORE

RCI-DINNER KEY, INC.,
A Florida Corporation,

and

MIAMI BEACH MARINA
ASSOCIATES, LTD.,
A Florida Limited Partnership,

    Plaintiffs,

v.

M.V. "THE ATLANTIC", f/k/a
"MAX 1", her boilers, engines, tackle,
equipment, freight, appliances, apparel,
appurtenances, etc., IN REM,:
MLA CRUISES, INC.,
A Delaware Corporation; and
MAJESTY ENTERPRISES OF
FLORIDA, LLC., A Florida Limited
Liability Company,

    Defendants.
_____/

## STIPULATED INTERIM SETTLEMENT AGREEMENT

THIS INTERIM SETTLEMENT Agreement entered into by and between MLA

CRUISES, INC., a Delaware corporation; and MAJESTY ENTERPRISES OF

FLORIDA, LLC., a Florida Limited Liability Company, (collectively referred to as

"MLA") and RCI-DINNER KEY, INC., a Florida corporation and MIAMI BEACH MARINA ASSOCIATES, LTD., A Florida Limited Partnership (collectively referred to as "RCI") on this 13th day of March, 2004 at Miami, Florida is as follows:

WHEREAS MLA is the title owner of the M.V. THE ATLANTIC.

WHEREAS RCI is the Plaintiff in an In Rem action against MLA and has secured the issuance of a warrant arresting the M.V. THE ATLANTIC.

WHEREAS MLA has entered into an Asset Purchase Agreement and Addendum (hereinafter referred to as the "APA") with MB CRUISES, INC. and SOUTHEAST CRUISE HOLDINGS, L.L.C. (Collectively referred to as "MB"); and

WHEREAS the APA provides for a Six Million and 00/100 Dollars ($6,000,000.00) purchase price with a Three Hundred Thousand and 00/100 Dollars ($300,000.00) deposit that goes at risk on March 18, 2004; and

WHEREAS between now and March 18, 2004, MB is conducting its due diligence; and

WHEREAS RCI and MLA are desirous of resolving their differences on an amicable basis; and

WHEREAS both parties are desirous of reducing their understanding to writing; and

NOW THEREFORE in consideration of $10.00 in hand paid and the mutual promises contained herein:

2

1. That the parties agree that when the Three Hundred Thousand and 00/100 Dollars ($300,000.00) deposit described above as part of the APA, goes at risk, that MLA agrees to give RCI up to Thirty Thousand and 00/100 Dollars ($30,000.00) to make any necessary repairs to the dock of the M.V. THE ATLANTIC at the Miami Beach Marina. That RCI agrees to supply MLA with all the bills and statements that reflect the actual amount of money spent on the repair of the dock so as to allow MLA to submit a claim for reimbursement to its insurance company. Said bills and/or statements will be provided to MLA as soon as they are received by RCI. MLA agrees to pay to RCI Fifteen Thousand and 00/100 Dollars ($15,000.00) as soon as the Three Hundred Thousand and 00/100 Dollars ($300,000.00) deposit in escrow goes at risk. The balance of the repairs to the RCI dock are not to exceed Fifteen Thousand and 00/100 Dollars ($15,000.00) and will be promptly paid from the escrow deposit upon receipt of the bills and statements for said repairs from RCI.

2. That RCI agrees to abate its litigation, to wit: Case Number 04-20499 CIV-MOORE, to wit: RCI-DINNER KEY, INC., a Florida corporation and MIAMI BEACH MARINA ASSOCIATES, LTD., a Florida Limited partnership vs. M.V. "THE ATLANTIC", f/k/a "MAX I", her boilers, engines, tackle, equipment, freight, appliances, apparel, appurtenances, etc., In Rem, MLA CRUISES, INC., a Delaware corporation; and MAJESTY ENTERPRISES OF FLORIDA, LLC., Florida Limited Liability Company: and MLA agrees to abate its Motion to Show Cause and for Emergency Relief

3

from the Warrant for Arrest In Rem, set for Wednesday, March 17, 2004 before the Honorable John J. O'Sullivan, pending the closing pursuant to the APA between MLA and MB.

3. That RCI agrees to forthwith instruct the U.S. Marshals to release and vacate the warrant of arrest of the M.V. THE ATLANTIC so as to allow MLA to begin operations of the Atlantic Casino; RCI and Robert Christoph agree to forthwith execute any and all documents and pleadings that are required to release and vacate the Warrant arresting the M.V. THE ATLANTIC so that MLA can take possession and use of the M.V. THE ATLANTIC. RCI agrees that on execution of this agreement, it will give MLA immediate access to the M.V. THE ATLANTIC for the purpose of maintenance and preparation of the vessel for operation and cruising, but MLA agrees not to take any actions in violation of the Local Rules or the Supplemental Rules, such as making repairs which require the consent of the U.S. Marshall. Once the arrest has been vacated, MLA is free to make any and all necessary repairs. The parties agree that the vessel is not to be taken out of the Southern District of Florida other than past the three (3) mile limit for gaming purposes. In the event the vessel is taken out of the Southern District of Florida for any other purposes, the Defendants will be in default of this agreement. The Defendants and their principals will be in contempt of Court if the vessel is docked outside of the Southern District of Florida. When the vessel is not sailing it must be docked at the Miami Beach Marina, except for fueling or an emergency which requires

4

docking elsewhere.

4. The Defendants hereby agree that representatives of MB will be allowed as observers on all Atlantic Casino cruises, however, RCI and MB agree not to interfere with the casino operations and the actual sailing of the M.V. THE ATLANTIC and MLA agree to provide an actual Certificate of Insurance naming RCI as a third party beneficiary before MLA or its agents reenter the vessel. The Defendants agree that the vessel will not sail without giving the opportunity to the representatives of MB to be on board, which will be complied with by giving actual notice to the MB representative and notifying RCI of intent to set sail no later than three (3) hours prior to leaving the dock.

5. That after March 18, 2004, if the deposit goes at risk, pursuant to the APA, by the execution of this agreement, MLA hereby instructs the escrow agent, David M. Goldstein, appointed pursuant to the APA, not to distribute the remaining APA deposit until such time as the transaction between MLA and MB closes, except as provided in paragraph 1 herein. Upon closing, Plaintiffs shall enjoy first priority and be paid in full for all of their claims under the lease, the marine note and the mortgages prior to the dispersal of funds to any other individual or entity. Plaintiffs shall also be entitled to full and complete reimbursement for all charges in connection with this litigation including reasonable attorney's fees, Court costs, including but not limited to all of the charges imposed by the U.S. Marshal in connection with this litigation not to exceed Twenty Five Thousand and 00/100 ($25,000.00) Dollars. Additionally, the balance of the Three

Hundred Thousand and 00/100 ($300,000.00) deposit will be held in escrow by David M. Goldstein, Esquire pending payment and satisfaction in full of Plaintiffs' claims, to wit: Plaintiffs shall be entitled to complete payment of the first preferred ship mortgage including all principal and interest due under the first preferred ship mortgage and all charges and fees and interest owed under the lease agreement.

6. RCI agrees to cooperate with MLA and MB and execute any normal and customary documents requested by them as deemed necessary to assist in the consummation of the transaction of the sale of the M.V. THE ATLANTIC to MB, so long as any documents presented do not change alter, or modify any terms, rights or remedies Plaintiffs have under the lease or mortgages.

7. If MB fails to close the APA transaction on March 31, 2004 for any reason whatsoever, RCI will be entitled to resume the instant action, or otherwise take whatever legal action that it desires to enforce the agreements that are the subject matter of the herein litigation, and, MLA, by the execution of this agreement, instruct David M. Goldstein, Esquire to hold said deposit of the APA in escrow until the RCI auction/foreclosure sale takes place. In the event of any deficiency incurred by RCI at the auction/foreclosure sale of the M.V. THE ATLANTIC, said deficiency shall be satisfied with the balance of the Three Hundred Thousand and 00/100 ($300,000.00) Dollars deposit being held in escrow; otherwise, if there is no RCI deficiency, said money will be distributed to MLA, and RCI agrees to waive any other claims it may have against

6

said APA deposit monies.

8.  If at the conclusion of the due diligence period under the APA, March 18, 2004, the parties determine not to proceed to closing, then RCI shall have the right to immediately resume the instant action, and RCI shall be free re-arrest the vessel, and this agreement shall be null and void.

9.  A material default under this Agreement shall include, but not be limited to, the following circumstances or events:

   a. MLA fails to pay to RCI Fifteen Thousand and 00/100 Dollars ($15,000.00) as soon as the Three Hundred Thousand and 00/100 Dollars ($300,000.00) deposit in escrow goes at risk.

   b. MLA fails to promptly pay the remaining amount due RCI, the additional fifteen thousand dollars ($15,000.00), for repairs upon receipt of the bills and statements for said repairs from RCI.

   c. Defendants remove the vessel from the Southern District of Florida other than past the three (3) mile limit for gaming purposes.

   d. The vessel is docked at a Marina other than the Miami Beach Marina, other than as required for fueling or emergency.

   e. The vessel sets sail without giving the notice required under paragraph 4 herein.

In the event of a material default, the parties hereby agree that the remaining

7

balance in the Three Hundred Thousand ($300,000.00) Dollar escrow deposit shall immediately be forfeited to RCI and upon a written request from the Plaintiffs, the escrow agent is hereby directed to promptly render the balance in the escrow account to RCI.

10. This instrument constitutes and contains the entire Agreement and understanding concerning the parties, and this instrument supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matters hereof and no prior or contemporaneous statements not embodied in this Agreement shall be of any force or effect. This agreement shall not be changed, supplemented, or amended in any manner except by an instrument in writing properly executed by the parties to this agreement. This agreement does not modify, change or alter any rights or remedies Plaintiffs have under the lease or mortgages, except as to the timing on the arrest of the vessel as specifically provided for herein. The parties agree that the Court shall retain jurisdiction of this cause for all purposes, including, but not limited to, enforcement of this Agreement, and any further proceedings initiated by any party hereto in the event of a default under this Agreement.

11. Any notice, request, or other communication required to be given pursuant to the provisions of this agreement (except the notice required under Paragraph 4 hereto) shall be in writing and shall be deemed to have been given when delivered in person or five days after being deposited in the United States mail, certified or registered, postage prepaid, return receipt requested, and addressed as follows:

8

ROBERT CHRISTOPH                                     33/39

If to RCI: RCI DINNERKEY · 300 ALTON Rd, Suite 303, Miami Beach FL

If to MLA or MAJESTY: _____

The address of either party to this agreement may be changed by notice in writing to the other party served in accordance with this provision.

12. This agreement shall be construed, governed, and enforced in accordance with the laws of the State of Florida. In addition, by executing this agreement the parties hereto submit to the jurisdiction of the Courts of the State of Florida for purposes of any action arising under this agreement and venue shall be in Miami-Dade County, Florida. If a dispute develops hereunder, the prevailing party shall be entitled to reasonable attorney's fees and costs at all stages of the dispute.

13. The parties hereto agree that each will, from the time to time and upon the reasonable request of the other party to this agreement, execute, acknowledge, and deliver in proper form any instruments of conveyance or further assurance necessary or desirable to effect the performance of this agreement so long as any documents presented do not change, alter, or modify any rights or remedies of the Plaintiffs under the lease, marine note or mortgages.

14. The parties stipulate that each party has had the opportunity to be represented by Counsel of their choice in the negotiation, drafting and execution of this Agreement. It is hereby stipulated and agreed that this Agreement shall be construed as being jointly prepared and written by all parties hereto. The terms and conditions

9

contained herein have been negotiated, renegotiated, and considered on different occasions by the parties. The fact that one lawyer or the other prepared the actual final draft of this Agreement shall not be construed as having been a document created by that attorney for the purposes of having any ambiguities contained therein against that lawyer's client.

IN WITNESS WHEREOF, the parties hereto have set their respective hands and seal the date and year first written above at Miami, Miami-Dade County, Florida.

WITNESSES:

Sign: _____
Print Name: Robert Christoph Jr.

RCI-DINNER, KEY, INC.

By: _____
Robert Christoph, President

Sign: _____
Print Name: Robert Christoph Jr.

MIAMI BEACH MARINA ASSOCIATES, LTD.

By: _____
Robert Christoph, President of General Partner

Sign: _____
Print Name: _____

MLA CRUISES, INC.

By: _____
Leonid Tatarchuk, Vice President

10

|  | MAJESTY ENTERPRISES OF FLORIDA, L.L.C. |
|---|---|
| Sign:_____<br>Print Name:_____ | By:_____<br>Leonid Tartarchuk, Managing Member |